**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DONEDWARD WHITE, individually and on behalf of all others similarly situated,<br><br>v.<br><br>PEPSICO, INC. | Case No. 1:22-cv-02066<br>Fed. R. Civ. P. 23 Class Action |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

Summary

1. Like many other companies across the United States, PepsiCo's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout PepsiCo's organization.

3. As a result, PepsiCo's workers who were not exempt from the overtime requirements under Illinois law, were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4. Donedward White is one such PepsiCo worker.

5. PepsiCo could have easily implemented a system for recording hours and paying wages to non-exempt employees until issues related to the hack were resolved.

6. But it didn't. Instead, PepsiCo used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. PepsiCo pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. The burden of the Kronos hack was made to fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. PepsiCo's failure to pay wages, including proper overtime, for all hours worked violates the the Illinois Minimum Wage Law (IMWL), 820 ILCS § 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS § 115/1 *et seq.*

10. White brings this lawsuit to recover these unpaid overtime wages and other damages owed by PepsiCo to him and the non-overtime-exempt workers like him, who were the ultimate victims of not just the Kronos hack, but also PepsiCo's decision to make its front-line workers bear the economic burden for the hack.

11. This action seeks to recover the unpaid wages and other damages owed by PepsiCo to all these workers, along with the penalties, interest, and other remedies provided by Illinois law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the Parties and the amount in controversy exceeds $75,000.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

14. White worked for PepsiCo in this District.

## PARTIES

15. **Plaintiff Donedward White** is a natural person.

16. White is a resident and citizen of Illinois.

17. White has been, at all relevant times, an employee of PepsiCo.

18. White has worked for PepsiCo since June 2013.

19. White has, at all relevant times, worked for PepsiCo in Illinois.

20. White represents a class of similarly situated workers under Illinois law pursuant to Federal Rule of Civil Procedure 23. This "Illinois Class" is defined as:

> **All current or former non-exempt employees of PepsiCo, including its subsidiaries and alter egos, who worked in Illinois at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

21. Throughout this Complaint, the Illinois Class Members are also referred to as the "Similarly Situated Workers."

22. **Defendant PepsiCo, Inc. ("PepsiCo")** is a North Carolina corporation.

23. PepsiCo maintains its headquarters and principal place of business in New York.

24. PepsiCo conducts business in a systematic and continuous manner throughout Illinois and this District.

25. PepsiCo may be served by service upon its registered agent, **CT Corporation System, 208 S. LaSalle St., Ste. 814, Chicago, IL 60604**, or by any other method allowed by law.

26. At all relevant times, PepsiCo exerted operational control over its subsidiaries and alter egos.

27. At all relevant times, PepsiCo substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

28. At all relevant times, PepsiCo had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

29. PepsiCo employed and/or jointly employed, with its subsidiaries and alter egos, White and the Similarly Situated Workers.

30. PepsiCo and its respective subsidiaries and alter egos are joint employers for purposes of Illinois law.

## FACTS

31. PepsiCo is a food, snack, and beverage corporation.

32. Many of PepsiCo's employees are paid as non-exempt hourly and salaried workers.

33. Since at least 2021, PepsiCo has used timekeeping software and hardware operated and maintained by Kronos.

34. On or about December 11, 2021, Kronos was hacked with ransomware.

35. The Kronos hack interfered with its clients, including PepsiCo's, ability to use Kronos's software and hardware to track hours and pay employees.

36. Since the onset of the Kronos hack, PepsiCo has failed to keep accurate track of the hours that White and Similarly Situated Workers have worked.

37. Instead, PepsiCo has used various methods to estimate the number of hours White and Similarly Situated Workers work in each pay period.

38. For example, PepsiCo issued paychecks based on the workers' scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

39. As a result of PepsiCo's failure to accurately track the actual hours worked by its employees each week, employees who were non-exempt and who worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

40. Many employees were not even paid for all their non-overtime wages for hours worked before 40 in a workweek.

41. White is one of the thousands of PepsiCo employees affected by these pay and timekeeping practices.

42. Instead of paying White for the hours he actually worked (including overtime hours), PepsiCo simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** White's actual hours, in multiple workweeks.

43. In some instances, White was paid portions of overtime hours worked, but the overtime rate was not at the proper overtime premium of at least 1.5x his agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonuses.

44. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

45. PepsiCo knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

46. PepsiCo knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

47. PepsiCo knows it has to pay the wages it agreed to pay its employees.

48. PepsiCo knows this because, prior to the Kronos hack, it routinely paid these workers for all hours worked at the rates it agreed to pay them.

49. PepsiCo could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

50. Instead of accurately tracking hours and paying employees' wages and overtime, PepsiCo decided to arbitrarily pay these employees, without regard to the wages and overtime they were owed.

51. Even to the extent it did pay some overtime to affected employees, PepsiCo failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Asurion did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

52. It was feasible for PepsiCo to have its employees and managers report accurate hours so they could be paid for the work they did for the company.

53. But PepsiCo chose not to do that.

54. In other words, PepsiCo pushed the effects of the Kronos hack onto the backs of their most economically vulnerable workers, making sure that it kept the money owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

55. White is one of PepsiCo's employees who had to shoulder the burden of this decision by PepsiCo.

56. White was and is a non-exempt hourly employee of PepsiCo.

57. White regularly works over 40 hours per week for PepsiCo.

58. White's normal, pre-Kronos hack hours are reflected in PepsiCo's records.

59. Since the Kronos hack, PepsiCo has not paid White for his actual hours worked each week.

60. Since the hack took place, PepsiCo has not been accurately recording the hours worked by White and its other workers.

61. Even though PepsiCo has had White record and submit his hours, PepsiCo has not issued proper payment for all hours worked.

62. Even when PepsiCo has issued payment to White for any overtime, the overtime is not calculated based on White's regular rates, as required by Illinois law.

63. PepsiCo was aware of the overtime requirements of Illinois law.

64. PepsiCo nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as White.

65. PepsiCo's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the MWHL.

66. The full overtime wages owed to White and the Similarly Situated Workers became "unpaid" when the work for PepsiCo was done—that is, on White and the Similarly Situated Workers' regular paydays.

67. At the time PepsiCo failed to pay White and the Similarly Situated Workers in full for their overtime hours by their regular paydays, PepsiCo became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under the law.

68. In other words, there is no distinction between late payment and nonpayment of wages under the law.

69. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law.

70. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to PepsiCo's acts and omissions resulting in the unpaid wages in the first place.

71. White and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by PepsiCo under Illinois law.

## CLASS ACTION ALLEGATIONS

72. White incorporates all other allegations.

73. The illegal practices PepsiCo imposed on White were likewise imposed on the Illinois Class members.

74. Numerous other individuals who worked for PepsiCo were not properly compensated for all hours worked, as required by Illinois law.

75. The Illinois Class is so numerous that joinder of all members of the class is impracticable.

76. PepsiCo imposed uniform practices and policies on White and the Illinois Class members regardless of any individualized factors.

77. Based on his experience and tenure with PepsiCo, as well as coverage of the Kronos hack, White is aware that PepsiCo's illegal practices were imposed on the Illinois Class members.

78. Illinois Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

79. PepsiCo's failure to pay wages and overtime compensation in accordance with Illinois law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Illinois Class members.

80. PepsiCo's failure to pay wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Illinois Class members.

81. White's experiences are therefore typical of the experiences of the Illinois Class members.

82. White has no interest contrary to, or in conflict with, the members of the Illinois Class. Like each member of the proposed class, White has an interest in obtaining the unpaid wages and other damages owed under the law.

83. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

84. Absent this action, many Illinois Class members likely will not obtain redress of their injuries and PepsiCo will reap the unjust benefits of violating Illinois law.

85. Furthermore, even if some of the Illinois Class members could afford individual litigation against PepsiCo, it would be unduly burdensome to the judicial system.

86. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

87. The questions of law and fact common to each of the Illinois Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether White and the Illinois Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

    b. Whether PepsiCo's failure to pay White and the Illinois Class members overtime at the rates required by law violated Illinois law; and

    c. Whether PepsiCo failed to pay White and the Illinois Class Members at their agreed upon rates of pay.

88. White's claims are typical of the Illinois Class members. White and the Illinois Class members have all sustained damages arising out of PepsiCo's illegal and uniform employment policies.

89. White knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

90. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

**FIRST CAUSE OF ACTION—VIOLATIONS OF THE IMWL**

91. White incorporates all other allegations.

92. The conduct alleged in this Complaint violates the IMWL.

93. At all relevant times, PepsiCo was and is an "employer" within the meaning of the IMWL.

94. At all relevant times, PepsiCo employed White and all other Illinois Class Members as "employees" within the meaning of the IMWL.

95. The IMWL requires employers like PepsiCo to pay overtime to all non-exempt employees.

96. White and the other Illinois Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

97. Within the applicable limitations period, PepsiCo had a policy and practice of failing to pay proper overtime to the Illinois Class Members for their hours worked in excess of 40 hours per week. IMWL, 820 ILCS § 105/4(a).

98. As a result of PepsiCo's failure to pay proper overtime to White and the Illinois Class Members for work performed in excess of 40 hours in a workweek, PepsiCo violated the IMWL.

99. White and the Illinois Class Members are entitled to overtime wages under the IMWL in an amount equal to 1.5 times their rates of pay, plus interest, attorneys' fees, costs, and all other damages allowed under the IMWL. IMWL, 820 ILCS § 105/12.

100. Interest under the IMWL is calculated as 2% of the amount of the unpaid wages for each month following the date of the unpaid wages until paid for each unpaid employee.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE IWPCA

101. White incorporates all other allegations.

102. The conduct alleged in this Complaint violates the IWPCA.

103. At all relevant times, PepsiCo was and is an "employer" within the meaning of the IWPCA.

104. At all relevant times, PepsiCo employed White and all other Illinois Class Members as "employees" within the meaning of the IWPCA.

105. The IWPCA requires employers like PepsiCo to pay workers at their agreed upon rates of pay.

106. PepsiCo obligation under the IWPCA to pay workers at their agreed upon rates of pay regardless of the basis of calculation. IWPCA, 820 ILCS § 115/3.

107. PepsiCo violated the IWPCA by failing to compensate White and the Illinois Class Members for all hours worked in Illinois at their agreed upon rates of pay.

108. PepsiCo was required to pay workers their wages and final compensation within the time allowed by the IWPCA. IWPCA, 820 ILCS § 115/4.

109. PepsiCo violated the IWPCA by failing to pay White and the Illinois Class Members their wages and final compensation within the time required under the IWPCA.

110. Under the IWPCA, White and the Illinois Class Members are entitled to recover their unpaid wages, final compensation, and wage supplements, plus interest, attorneys' fees, costs, and all other damages allowed under the IWPCA. IWPCA, 820 ILCS § 115/14.

111. Interest under the IWPCA is calculated as 2% of the amount of the underpayment for each month following the date of the underpayment until paid for each unpaid employee.

**RELIEF SOUGHT**

White prays for judgment against PepsiCo as follows:

 a. For an order certifying a class action for the Illinois law claims;

 b. For an order finding PepsiCo liable for violations of state wage laws with respect to White and all Illinois Class members covered by this case;

 c. For a judgment awarding all unpaid wages, liquidated damages, and penalties, to White and all Illinois Class members covered by this case;

 d. For an equitable accounting and restitution of wages due to White and all Illinois Class members covered by this case;

e. For a judgment awarding attorneys' fees to White and all Illinois Class members covered by this case;

f. For a judgment awarding costs of this action to White and all Illinois Class members covered by this case;

g. For an order awarding 2% monthly interest on all overtime compensation due to White and all Illinois Class Members covered by this case, from the date the wages were due until paid;

h. For an order awarding 2% monthly interest on all overtime compensation due to White and all Illinois Class Members covered by this case, from the date the underpayments were due until paid;

i. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to White and all Illinois Class members covered by this case; and

j. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
N.D. Ill. Bar # 24069719 (TX)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Warren Astbury, Esq.**
Illinois Bar No.: 6298999
**MORGAN & MORGAN, P.A.**
55 E. Monroe St., Ste. 3800
Chicago, IL 60603
Tel:    (312) 706-0550
Fax:    (313) 739-1976
wastbury@forthepeople.com

**Attorneys for Plaintiff**